**FILED**

March 31 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0362

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 99

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

TAMMY WILKINS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 07-771
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jeffrey G. Michael, Attorney at Law; Billings, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General; Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Billings, Montana

Submitted on Briefs:  March 18, 2009

Decided:  March 31, 2009

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Tammy Mason Wilkins ("Wilkins") appeals from a conviction in Justice Court of driving under the influence. Wilkins appealed her conviction to the District Court for a trial de novo. She filed a motion to dismiss (later deemed a motion to suppress), arguing that the officer who stopped her did not have a particularized suspicion to justify the stop. The District Court denied her motion, concluding that the stop was justified both on the basis of particularized suspicion and under the community caretaker doctrine. Wilkins pleaded nolo contendere reserving the right to appeal the denial of the motion to suppress. We affirm.

## FACTUAL BACKGROUND

¶2      At approximately 1:30 a.m. on February 24, 2007, Deputy Sheriff John Smith ("Officer Smith") was on patrol on North Frontage Road in Billings. Officer Smith noticed Wilkins's vehicle with its lights on parked halfway down a side street next to a salvage yard. The street on which Wilkins was parked, Scott Street, is a dark, remote street occupied mostly by industrial businesses, which were closed at that time. There are, however, a few houses in the area. Officer Smith drove past Wilkins's vehicle, and noticed that it was running. There were other vehicles parked on the street but none of them had lights on or were running.

¶3      Officer Smith, who has 12 years of experience as a law enforcement officer, believed that Wilkins's vehicle was suspicious because it was unusual for a vehicle to be parked there with its lights on at that time of night, and burglaries had recently been

2

committed in the area. Officer Smith was also concerned about the driver of the vehicle because it was a cold night, near or below freezing, and the vehicle was in a remote location. As a result of these concerns, Officer Smith stopped to investigate. Officer Smith approached Wilkins in her vehicle. While speaking to Wilkins, he smelled the odor of an alcoholic beverage and noticed that her speech was slurred. Officer Smith conducted a DUI investigation and arrested Wilkins for DUI.

## STANDARD OF REVIEW

¶4 We review the denial of a motion to suppress to determine whether the court's findings of fact were clearly erroneous and whether it correctly applied the law to those findings. *State v. Graham*, 2007 MT 358, ¶ 10, 340 Mont. 366, 175 P.3d 885.

## DISCUSSION

¶5 Although the District Court concluded that the officer's encounter with Wilkins was justified due to the existence of particularized suspicion or justified under the community caretaker doctrine, we conclude that the Court reached the right result for the wrong reason.

¶6 Wilkins contends that there was no basis for particularized suspicion and that the community caretaker doctrine was not applicable. The State, on the other hand, contends that there is no need to analyze particularized suspicion or the caretaker doctrine since the District Court erred in the first instance in concluding that Wilkins was seized or stopped. We agree with the State.

3

¶7    The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons from unreasonable searches and seizures. *State v. Hall*, 2004 MT 106, ¶ 8, 321 Mont. 78, 88 P.3d 1273.  The inquiry into whether a "seizure" has occurred is the same under the federal and the Montana Constitutions. *State v. Case*, 2007 MT 161, ¶ 24, 338 Mont. 87, 162 P.3d 849.

¶8    The United States Supreme Court explained in *Terry v. Ohio*, that "not all personal intercourse between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  392 U.S. 1, ¶¶ 19-20 n. 16, 88 S. Ct. 1868, 1879 n. 16 (1968).  "The central inquiry under the Fourth Amendment is the reasonableness under all the circumstances of a particular governmental invasion of a citizen's personal security."  *State v. Clayton*, 2002 MT 67, ¶ 12, 309 Mont. 215, 45 P.3d 30 (citing *Terry*, 392 U.S. at 19, 88 S. Ct. at 1878-79).

¶9    To determine whether a "seizure" has occurred, this Court has followed the test set out by the United States Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 553-54, 100 S. Ct. 1870 (1980).  *Clayton*, ¶ 21.  In *Mendenhall*, the Court concluded that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  446 U.S. at 554, 100 S. Ct. at 1877.  The Court provided examples of circumstances that might indicate that a person was seized:  "the threatening presence of several officers, the display of a weapon by an officer, some

4

physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S. Ct. at 1877.

¶10 In his search and seizure treatise, Professor LaFave notes that, "if an officer merely walks up to a person standing or sitting in a public place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure. Wayne LaFave, *Search and Seizure* vol. 4 § 9.4(a) 419-21 (4th ed. West 2004). Professor LaFave explains that, in order to make a basic inquiry, an officer may tap on the window of a car to get the person's attention or request that the person open the door or roll down the window without transforming the encounter into a seizure.

¶11 The Montana Supreme Court has not confronted the question of whether a person in a parked vehicle is necessarily seized when an officer stops behind the parked vehicle without activating the emergency lights on the patrol car and contacts the person in the vehicle. We did, however, hold in *Clayton* that a driver was not seized when an officer pulled up behind the driver's parked vehicle and shined a spotlight into his vehicle. *Clayton*, ¶ 27. On the other hand, where an officer stops his or her patrol car behind a parked vehicle, activates the car's emergency lights, and then contacts the occupant of the parked vehicle, that person is seized because he would not feel free to leave. *Graham*, ¶ 16; *State v. Reiner*, 2003 MT 243, ¶¶ 5, 19, 317 Mont. 304, 77 P.3d 210.

¶12   In the present case, the District Court concluded that a "stop" occurred because Wilkins "had a reasonable belief that she was not free to leave Scott Street when [Officer] Smith approached her." In *Mendenhall*, the United States Supreme Court referenced certain factors as being indicative of a "stop." Although the *Mendenhall*, factors are not exhaustive, we note that the District Court does not point to these factors or any other specific factors that support a finding of a seizure. Rather, our review of the record shows that officer Smith was the sole officer during the initial contact; he did not activate his emergency light, display a weapon or employ threatening tones. He simply approached Wilkins to find out why she was parked on a dark remote street late at night in cold weather.

¶13   In *State v. Merrill*, 2004 MT 169, ¶ 3, 322 Mont. 47, 93 P.3d 1227 (2004), officers pulled over Merrill for making an improper lane change. Although Officer Hight was aware that the owner of the vehicle (not Merrill) was suspected of involvement with drugs, he gave Merrill a verbal warning and told her she was free to leave. As he stepped away from the car, Officer Hight noticed that Merrill was acting unusually nervous. Hight then asked Merrill if he could talk to her for a minute. She agreed. He then asked if he could search her car and her person. Again she agreed, and Hight discovered drugs. Merrill contended that Hight's questioning of her following his verbal warning about the traffic violation constituted an unlawful seizure of her person; that no reasonable person would have felt free to leave with the patrol car's lights flashing and an armed officer on either side of her car. We agreed with Merrill that Hight had completed his investigation

of the traffic offense. At that point, the investigatory stop had concluded. "What followed, however, was neither a subsequent investigatory stop nor an extension of the first one. Rather, the subsequent encounter was a voluntary exchange, and no precept of law prevents an officer from engaging a citizen in such voluntary conversations." *Merrill*, ¶ 17.

¶14 Here, the facts are less intimidating than those in *Merrill* and *Clayton* wherein we concluded that there was no seizure. Officer Smith did not initiate the stop of Wilkins's vehicle. She was already parked on a public road. He did nothing to impede her liberty by means of physical force or show of authority—he did not have his emergency lights or sirens on, nor did he shine a spotlight into her car. As in *Merrill*, he engaged Wilkins in a voluntary exchange. A reasonable person in Wilkins's situation would not have concluded that she was not free to leave.

¶15 We conclude, based upon a review of the record, that Officer Smith's contact with Wilkins, who was already stopped in a public place, did not amount to a seizure. Accordingly, Officer Smith did not have to have a particularized suspicion to justify the contact. In speaking to Wilkins, her slurred speech and the odor of alcohol led him to initiate a DUI investigation.

¶16 Affirmed.

/S/ W. WILLIAM LEAPHART

7

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER