CHIEF JUSTICE McGRATH,
specially concurring.
¶23 I concur with the result reached by the Court, but I write separately because I disagree that the dispositive issue was probable cause to arrest.
¶24 The majority, the District Court, and briefs filed on appeal, assume that Officer Cross required either particularized suspicion or probable cause because Murray’s vehicle was stopped. However, this case does not concern a vehicular stop. Rather, the central issue is whether Murray was seized when Officer Cross engaged him in the parking lot of the Mormon Church. I would hold that Murray was never subjected to a constitutional seizure and suggest the Court take this opportunity to clarify its seizure jurisprudence.
¶25 When addressing the Fourth Amendment of the United States Constitution, the central inquiry is the reasonableness of the government’s intrusion of an individual’s personal security. Terry v. Ohio, 392 U.S. 1, 19, 88 S. Ct. 1868, 1878-79 (1968). An individual is seized for constitutional purposes when, by means of physical force or show of authority, his or her freedom of movement is restrained. United States v. Mendenhall, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980). In Mendenhall, Justice Stewart, writing for a plurality, explained that “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877. This Court adopted the Mendenhall test in State v. Jenkins, 192 Mont. 539, 543, 629 P.2d 761, 764 (1981), and has reaffirmed its use in later cases. E.g. State v. Roberts, 1999 MT 59, 293 Mont. 476, 977 P.2d 974; State v. Wilkins, 2009 MT 99, 350 Mont. 96, 205 P.3d 795.
*129 ¶26 Subsequent to Mendenhall, the United States Supreme Court revisited and altered its seizure jurisprudence on numerous occasions. See I.N.S. v. Delgado, 466 U.S. 210, 104 S. Ct. 1758 (1984); California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547 (1991); Florida v. Bostick, 501 U.S. 429, 111 S. Ct. 2382 (1991). Although Mendenhall is still credited as the foundation for Fourth Amendment seizure inquiries, the federal test has evolved to inquire whether, in a totality of the circumstances, “the police conduct would ‘have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.’” Kaupp v. Texas, 538 U.S. 626, 629,123 S. Ct. 1843, 1845 (2003);Brendlin v. California, 551 U.S. 249, 254-55, 127 S. Ct. 2400, 2405-06 (2007) (citing Bostick, 501 U.S. at 435-36, 111 S. Ct. at 2386-87). This Court however, has remained tethered to the original Mendenhall language. Wilkins, ¶ 9.1 believe that the “reasonable person” test has resulted in a confusing, unhelpful standard. This Court should take the opportunity to clarify it.
¶27 As a threshold matter, Mendenhall’s “reasonable person” standard has a problematic built-in contradiction, inquiring whether a reasonable person would feel free to leave, while inherently recognizing that the reasonable person already feels a level of compulsion to remain. Some courts frame this as a citizen’s interest in cooperating with law enforcement out of obligation, duty, or etiquette. U.S. v Tavolacci, 895 F.2d 1423, 1424 (D.C. Cir. 1990). Others acknowledge a level of pressure or coercion to stay when an officer approaches and begins questioning. U.S. v. Simmons, 918 F.2d 476, 480 (5th Cir. 1990) (“[0]ne’s self-identification as a law enforcement officer is not so coercive that this statement alone renders an encounter between citizen and police a seizure.”); Colorado v. Melton, 910 P.2d 672, 677 (Colo. 1996) (defendant felt no intimidation beyond “the inherent pressure felt by any citizen to cooperate with law enforcement officers”); Tennessee v. Daniel, 12 S.W.3d 420, 427 (Tenn. 2000) (“encounter did not become a seizure simply because Daniel may have felt inherent social pressure to cooperate”). Concurring in Kolender v. Lawson, Justice Brennan posited that the average person remains because he or she cannot know what is in an officer’s head, and is not sure that walking away is actually an option. 461 U.S. 352, 368-69, 103 S. Ct. 1855, 1864 (1983) (Brennen J., concurring). Professor Wayne LaFave has reasoned that a literal interpretation of Mendenhall would convert nearly every interaction between citizens and the police into a constitutional seizure. Wayne LaFave, Search and Seizure vol. 4, § 9.4(a), 424 (4th ed., West 2004).
*130 ¶28 Furthermore, it does not make sense for this Court to continue to adhere to a standard that is impractical and unrealistic. Recently, the Tenth Circuit Court of Appeals expressed displeasure with Mendenhall’s focus, explaining “[i]t might bring greater clarity to this area of the law if the test were framed in terms of whether the officer’s behavior is coercive rather than whether, under the circumstances, the reasonable person would feel Tree to disregard the police,’ which we suspect is unrealistic.” United States v. Thompson, 546 F.3d 1223, 1226 n. 1 (10th Cir. 2008). The Supreme Court of Illinois has stated that “‘a practical, realistic inquiry’ ... is not a description that one often sees applied to the Mendenhall standard.” Illinois v. Luedemann, 857 N.E.2d 187, 202 (Ill. 2006). Such sentiments have been echoed by other courts and jurists. Golphin v. State, 945 So.2d 1174, 1190 (Fla. 2006) (“In interpreting the scope of the Fourth Amendment, courts appear to have steadily increased expectations that the ‘reasonable person’ is one who not only knows the full extent of his rights, but zealously protects them to the point that he will not hesitate to confront authority and demand the return of identification so that he may effect his right to walk away.”); United States v. Notorianni, 729 F.2d 520, 522 (7th Cir. 1984) (“Maybe this is a wrong guess about what the average person feels in this situation but it is the law of this circuit.”); United States v. Williams, 356 F.3d 1268, 1276 (10th Cir. 2004) (McKay J., dissenting) (arguing that the “reasonable person” is a legal fiction historically defined by the experience of judges, rather than the record at hand); State v. Lalezari, 1994 Ohio App. LEXIS 3800, 14-15 (Ohio App. 2nd Dist.) (doubting the legal fiction that a “reasonable person” is the most likely individual to resist authority and avoid coercion); People v. Spicer, 157 Cal. App. 3d 213, 218 (Cal. App. 2d Dist. 1984) (citing State v. Shy, 373 So.2d 145 (La. 1979) (acknowledging that the “reasonable person” standard “may be the greatest legal fiction of the late 20th century”); Shy, 373 So.2d at 148-49 (Dennis J., dissenting) (criticizing the “free to walk away” standard as both legalistic and unrealistic).
¶29 The foregoing leads me to conclude that Montana would be better served by abandoning Mendenhall’s “reasonable person” language. A clearer standard would be one similar to the test recently adopted by the Oregon Supreme Court: Whether an officer’s objective actions restrict, interfere with, or deprive an individual’s liberty or freedom of movement. See State v. Ashbaugh, 349 Or. 297, 244 P.3d 360 (2010). Such a standard properly turns on the officer’s objective conduct.
*131 ¶30 Moreover, this Court has already chosen to break with federal seizure jurisprudence. State v. Clayton, 2002 MT 67, ¶ 22, 309 Mont. 215, 45 P.3d 30. In Clayton, this Court declined to follow the United States Supreme Court’s holding in Hodari D., 499 U.S. at 626, 111 S. Ct. at 1550, that an individual is not seized unless he or she actually yields to physical force or a show of authority. Clayton, ¶ 22. The Court determined that Hodari D. did not comport with the protections of the Montana Constitution. Id. at ¶¶ 21-22. As a result, in Montana a seizure can occur at the moment an officer displays authority, regardless of the individual’s subjective response to the authority. Id. at ¶ 24. Considering this Court is no longer tethered to the federal seizure standard, I see no reason for continued adherence to the confusing and problematic “reasonable person” test.
¶31 Turning to the case at hand, Cross did not “stop” Murray’s vehicle. He did not utilize the patrol car’s light-bar or siren, or indicate that Murray was not free to continue driving. Rather, Cross merely followed Murray down the road. Moreover, Charles Massey, the passenger in the truck, testified that he and Murray were unaware that they were being followed by a police car, and insisted that they parked at the church for reasons unrelated to the car'behind them. Thus, the proper focus of the inquiry is whether Cross seized Murray after the truck was already parked.
¶32 The objective circumstances do not support the conclusion that Murray was seized in the parking lot. Cross parked behind Murray’s truck preventing him from reversing. In Roberts this Court held a seizure occurred after an officer blocked Roberts’ car into a one-lane driveway, immediately exited the patrol vehicle, proceeded directly up to Roberts and engaged him in conversation. Roberts, ¶ 16. The circumstances here are quite different. Rather than exiting, Cross remained in his vehicle and radioed the dispatcher. Moreover, he sat and watched while Murray got out of the truck, removed his dogs and wandered off. Cross did not pursue Murray or demand engagement. Instead, he entirely ignored Murray, walked to the passenger side of the truck and spoke with Massey. Only after finishing with Massey and discovering that Murray was across the parking lot did Cross yell, in order to get Murray to approach. Accordingly, I would hold that no seizure occurred because Cross’ actions did not objectively restrict, interfere with, or deprive Murray’s liberty or freedom of movement.
JUSTICE NELSON joins in the foregoing specially concurring opinion of CHIEF JUSTICE McGRATH.