FILED

February 9 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0544

DA 14-0544

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 30

STATE OF MONTANA,

Plaintiff and Appellee,

v.

DEAN JASON BALLINGER,

Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-0816
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Haley Connell, Assistant Appellate Defender; Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General; Helena, Montana

Scott Twito, Yellowstone County Attorney, Juli Pierce, Deputy County
Attorney; Billings, Montana

Submitted on Briefs: December 29, 2015
Decided: February 9, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1      Dean Jason Ballinger appeals the order of the Thirteenth Judicial District Court, Yellowstone County, which denied his motions to suppress evidence and to dismiss the charge of felony criminal possession of dangerous drugs.  Ballinger later was convicted of the charge and sentenced to five years at Montana State Prison.  We affirm the District Court's denial of Ballinger's motions.

¶2      The issue on appeal is:

*Whether the District Court correctly found that the police officer had particularized suspicion to conduct an investigatory stop of Ballinger.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      On September 28, 2013, at approximately 9:30 p.m., Cindy Trumbo called the Billings Police Department's dispatch to report that the front door of a house across the street was open.  She believed the address was 211 South 33rd Street.  Trumbo reported that she saw people moving out of the house earlier in the day, but no one had been around the house for some time.

¶4      Billings Police Officer Grant Morrison responded to the call at 10:13 p.m.  When Officer Morrison arrived at 211 South 33rd Street, he found the front door open, the lights on, and no one around.  Officer Morrison parked his patrol vehicle on the north side of the house.  He then saw a man and a woman, later identified as Ballinger and Julie Ramirez, get out of a vehicle across the street.  Officer Morrison testified that "[t]hey were walking straight towards" 211 South 33rd Street.

¶5   As the man and the woman stepped on the curb, Officer Morrison testified that he "intercepted" them.  Using his flashlight to see better, Officer Morrison stated that he was responding to a call regarding a vacant residence with a door open.  He asked them where they were going, and Ramirez stated that they were going to meet people hanging out on the sidewalk.  Officer Morrison did not see anyone else on the sidewalk in the area.  Ramirez then said they were going from 622 South 31st Street (later identified as Ballinger's home) to 522 South 33rd Street (Ramirez's mother's home).  Officer Morrison testified that, at 211 South 33rd Street, Ballinger and Ramirez would be four blocks out of their way if they were going from Ballinger's home to Ramirez's mother's home.  Officer Morrison was suspicious of Ramirez's and Ballinger's presence in the area, and he suspected Ramirez was lying to him.

¶6   Officer Morrison asked Ballinger for identification.  Ballinger stated, "I just live right down the street."  Officer Morrison responded, "I need to identify you, and this is suspicious to me.  And this is what I'm investigating, so . . . I want to see ID."  Ballinger's Montana Identification Card confirmed that his address was 622 South 31st Street.  Officer Morrison ran a warrant check on Ballinger.  He found a probation violation warrant, and he detained Ballinger while he validated the warrant.  While patting down Ballinger, Officer Morrison felt numerous unknown items in Ballinger's pants pockets.  Because no items felt like a weapon, nothing was retrieved from Ballinger's pockets.  Officer Morrison also confirmed that neither Ballinger nor Ramirez lived at 211 South 33rd Street.

¶7     Officer Morrison arrested Ballinger.   Ramirez was allowed to leave.  Officer Morrison then left Ballinger with Officer Miller, who had arrived as back up.  Officer Morrison approached 211 South 33rd Street.  He found the lights on and the front door open.  Officer Morrison knocked on the door, called out, and rang the doorbell, but received no response.  Officer Morrison shut and locked the front door.

¶8     Ballinger was transported to the Yellowstone County Detention Facility.   After Ballinger was removed from the patrol vehicle and turned over to the Detention Facility staff, Officer Morrison searched his patrol vehicle.  Officer Morrison found a small plastic bag containing a white crystal substance in the back seat.  He identified the substance as methamphetamine.  The drugs were not present when Officer Morrison started his shift at 9:00 p.m., and no other person had ridden in the back seat of the vehicle that night.  On October 7, 2013, Ballinger was charged by information with criminal possession of dangerous drugs, a felony.

¶9     Ballinger moved to suppress the evidence of the drugs, arguing that Officer Morrison did not have particularized suspicion to conduct a stop of Ballinger or Ramirez. Ballinger then argued that the case should be dismissed for lack of evidence.  On December 18, 2013, the District Court held a hearing on Ballinger's motions to suppress and dismiss.

¶10    The District Court denied Ballinger's motions, finding that Officer Morrison had the required particularized suspicion to make the investigatory stop of Ballinger and Ramirez.  The District Court based its finding on the suspicious nature of the call, the condition of the home at 211 South 33rd Street, and Officer Morrison's observation of

4

Ramirez and Ballinger walking directly towards the house. The court also considered facts gathered after Officer Morrison began talking with Ballinger and Ramirez, including Ramirez's statement that they were going to see people on the sidewalk when no one else was around and Ramirez's explanation that they were traveling between two homes when they were four blocks out of their way.

¶11 On March 10, 2014, a jury found Ballinger guilty of criminal possession of dangerous drugs, a felony. Ballinger was sentenced to five years at Montana State Prison, and he was designated a persistent felony offender. Ballinger appeals.

## STANDARDS OF REVIEW

¶12 We review the grant or denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly interpreted and applied the law to those facts. *State v. Wagner*, 2013 MT 159, ¶ 9, 370 Mont. 381, 303 P.3d 285. A district court's determination that particularized suspicion exists is a question of fact, which we review for clear error. *Wagner*, ¶ 9. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *Wagner*, ¶ 9.

¶13 We review the denial of a motion to dismiss in criminal cases de novo to determine whether the district court's conclusions of law are correct. *State v. Seiffert*, 2010 MT 169, ¶ 10, 357 Mont. 188, 237 P.3d 669.

5

**DISCUSSION**

¶14 *Whether the District Court correctly found that the police officer had particularized suspicion to conduct an investigatory stop of Ballinger.*

¶15 Citizens are protected from unreasonable searches and seizures by government officials under both the Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution. Montanans are afforded broader protection from unreasonable searches and seizures under the express right to privacy in Article II, Section 10 of the Montana Constitution. *State v. Bullock*, 272 Mont. 361, 384, 901 P.2d 61, 75 (1995).

¶16 With limited exceptions, police officers must obtain a warrant before seizing an individual under both the United States Constitution and the Montana Constitution. *State v. Graham*, 2007 MT 358, ¶ 13, 340 Mont. 366, 175 P.3d 885. One exception to the warrant requirement is the investigatory or "*Terry* stop," which allows "a brief seizure of the individual that must be supported by a reasonable [or particularized] suspicion of criminal activity." *State v. Lovegren*, 2002 MT 153, ¶ 15, 310 Mont. 358, 51 P.3d 471 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). Such a stop "may not last longer than necessary to effectuate the purpose of the stop." Section 46-5-403, MCA.

¶17 Ballinger argues that he was seized when Officer Morrison stopped him with a flashlight and began asking him questions. The District Court did not make an explicit finding as to when Officer Morrison seized Ballinger. However, it is clear from the District Court's order denying Ballinger's motion to suppress that the court found particularized suspicion by relying upon all of the information Officer Morrison obtained

6

before asking Ballinger for his identification. Implicit in the District Court's analysis, therefore, is that it found no seizure had occurred until Officer Morrison asked Ballinger for his identification.

¶18 "'[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'" *State v. Wilkins*, 2009 MT 99, ¶ 8, 350 Mont. 96, 205 P.3d 795 (quoting *Terry*, 392 U.S. at 19 n.16, 88 S. Ct. at 1879 n.16). To determine if a seizure has occurred, this Court applies the same test under both the United States and Montana Constitutions. *State v. Strom*, 2014 MT 234, ¶ 10, 376 Mont. 277, 333 P.3d 218. "'[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Wilkins*, ¶ 9 (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)). Circumstances which may indicate that a person has been seized include the presence of many officers, a display of weapons by an officer, physical touching of the person by the officer, or the officer's use of language or tone indicating compliance with the officer's request is required. *Strom*, ¶ 10 (citing *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877). However, these factors are not exhaustive. *Strom*, ¶ 10.

¶19 The record in this case does not support Ballinger's contention that a seizure occurred before Officer Morrison asked for his identification. Officer Morrison first "intercepted" Ballinger and Ramirez as they were walking on a public street towards the

7

vacant house that he was investigating. In *State v. Dupree*, 2015 MT 103, 378 Mont. 499, 346 P.3d 1114, this Court held that the defendant was not seized when officers approached her in a public place of her choosing, identified themselves as law enforcement officers, and told her about a tip they had received that indicated that she would be carrying drugs. *Dupree*, ¶ 15. We further held the defendant was not seized when the officers asked the defendant if she would sign a consent form for a search or when they asked her to move to another room. *Dupree*, ¶ 15.

¶20 Here, the parties were on a public street, and Officer Morrison told Ballinger and Ramirez that he was investigating a suspicious call regarding a vacant house with an open door. Wanting to know if they were connected to the vacant house, he asked them where they were going. Officer Morrison made no show of force or authority; he merely used a flashlight to see better in the dark. Officer Morrison did not ask Ballinger or Ramirez to do anything until he requested their identification and stated, "I need to identify you, and this is suspicious to me. And this is what I'm investigating, so . . . I want to see ID." The State concedes that at this point the encounter became a seizure because Ballinger and Ramirez would not have felt free to stop the encounter and walk away.

¶21 Regardless of when he was seized, Ballinger contends that Officer Morrison did not have particularized suspicion for the stop. A police officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. A police officer has particularized suspicion to conduct an investigatory stop when the officer has "(1) objective data and articulable

8

facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense." *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. When reviewing whether a police officer had particularized suspicion, a court must "look to the facts and to the totality of the circumstances of each case." *Brown*, ¶ 20.

¶22 Before Officer Morrison requested Ballinger's identification, Officer Morrison had objective data and articulable facts from which he could reasonably infer and suspect that Ballinger was involved in criminal activity. Just as Officer Morrison was responding to a call regarding a vacant house with an open door at 211 South 33rd Street, Ballinger and Ramirez arrived at the same house, and Officer Morrison observed them walk directly towards the house. Officer Morrison stopped Ballinger and Ramirez and told them he was investigating a vacant house with an open door. When asked where they were going, Ramirez stated that they were meeting people on the sidewalk, but Officer Morrison did not observe any other people in the vicinity. Ramirez also explained that they were travelling between two homes that Officer Morrison observed would not normally take them past the vacant house they were walking directly towards.

¶23 Based on the totality of the facts and circumstances of this case, Officer Morrison had a particularized suspicion that justified an investigatory stop of Ballinger. The evidence collected as a result of the investigatory stop and validly executed arrest warrant was admissible at trial. The District Court correctly denied Ballinger's motions to suppress the evidence and dismiss the charge.

9

**CONCLUSION**

¶24 The District Court correctly found that Officer Morrison had particularized suspicion to conduct an investigatory stop of Ballinger. Therefore, Ballinger's motions to suppress the evidence gathered as a result of the stop and to dismiss the charge of criminal possession of dangerous drugs for lack of evidence were correctly denied. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE