Justice Jim Rice delivered the Opinion of the Court.
*403 ***447 ¶1 Randall Questo appeals the Order entered by the Tenth Judicial District Court, Fergus County, denying his motions to suppress. We affirm.
***448 Did the District Court err by denying Questo's Motions to Suppress?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 At approximately 6:00 p.m. on April 24, 2017, the Lewistown Police Department received a call from two employees at the local Boys and Girls Club reporting that an adult male, who "smelled of [an] alcoholic beverage," had just picked up his minor children from the Club and was leaving with them in a muddy blue truck. The callers identified themselves, provided dispatch a description of the vehicle, and identified the driver as Randall Questo. Lewistown Police Officer William Routzahn, who received this information from dispatch while on patrol, was familiar with Questo. Routzahn proceeded to the area near the Boys and Girls Club, attempting to locate Questo and the vehicle described by the callers.
¶3 Officer Routzahn located a truck matching the description provided by the Club employees parked at a gas station fuel pump, and observed an adult male, who he recognized as Questo, standing beside the truck and filling it with fuel. Routzahn had not observed Questo driving. Routzahn drove his patrol car into the gas station's parking lot and parked next to the curb, away from the fuel pumps. He did not activate his vehicle's overhead lights. Routzahn's vehicle was facing the front of Questo's truck, but was parked on the opposite side of the parking lot's driveway. Routzahn estimated that he parked thirty or more feet away from Questo's truck, which provided space enough for Questo to exit and a "right of way so that people in the parking lot could get in and out as well."
¶4 Officer Routzahn approached Questo on foot and advised him a call had been received from the Club, reporting that Questo had smelled of alcohol when he picked up his children. Questo admitted driving the truck from the Club to the gas station, and indicated his girlfriend and two children were inside the vehicle, but denied that he smelled of alcohol. Routzahn said that he detected an odor of alcohol coming from Questo or his truck. Questo replied that he had empty beer cans in the back of his truck and suggested those might be causing the smell. Routzahn expressed doubt that the empty cans could be causing such a smell, given the windy conditions. He then asked if Questo had been drinking. Questo answered no, stating he had drunk alcohol the night before but not that day.
¶5 Routzahn asked if Questo would perform some field sobriety tests, and Questo agreed. To conduct the test out of the wind, Routzahn and Questo moved across the parking lot to a location near the gas station ***449 building. Routzahn testified that, removed from the truck, he could "still detect an odor of alcoholic beverage" emanating from Questo. Routzahn conducted the horizontal gaze nystagmus test and noted that Questo scored a three out of six, which he testified indicates "a certain level of impairment." Routzahn advised Questo of the test results and again asked whether he had been drinking. This time, Questo stated that "he'd had a couple beers a few hours prior" and had recently consumed Dayquil. Routzahn asked Questo if he would perform a preliminary breath test (PBT), and Questo agreed. Questo provided a breath sample, which registered an illegal blood-alcohol content for purposes of driving. Officer Honeycutt, who had arrived as backup, did not formally arrest Questo at the time, but transported him to the Sheriff's office for additional testing. A breath test conducted at the Sheriff's office indicated Questo had a blood-alcohol content of 0.121.
¶6 Questo was arrested and charged by Information in Count I with Criminal Endangerment, a felony in violation of § 45-5-207, MCA, and in Count II with Driving Under *404 the Influence of Alcohol (DUI), a misdemeanor in violation of § 61-8-401(1)(a), MCA. Questo filed a motion to suppress the evidence, arguing Officer Routzahn "lacked particularized suspicion for the investigatory stop based on a citizen's report." After an evidentiary hearing, at which Questo was represented by counsel, the District Court denied the motion.
¶7 Questo then discharged his attorney and obtained new legal counsel. After the State filed an Amended Information, adding Count III, DUI per se, in violation of § 61-8-406, MCA, Questo's new counsel filed a second motion to suppress, requesting the District Court reconsider his initial motion and also consider additional arguments. The District Court granted the request. In his second motion, Questo again argued that, "prior to the 'stop' of his vehicle," the officer lacked particularized suspicion to investigate him for DUI, and also argued "there is zero evidence of observable impairment prior to his arrest and therefore no probable cause for his arrest." The District Court conducted another evidentiary hearing and entered an order again denying Questo's motion, reasoning the citizen tip satisfied the reliability factors in State v. Pratt , 286 Mont. 156, 951 P.2d 37 (1997), and reiterated its earlier conclusion that Officer Routzahn "did have particularized suspicion to perform a DUI investigation." The State filed a Second Amended Information, amending Count I to Criminal Child Endangerment, a felony in violation of § 45-5-628, MCA. Pursuant to a plea bargain agreement, Questo pled guilty to Count III, misdemeanor DUI per se, in violation of § 61-8-406, MCA, reserving his right to appeal the District Court's denial of his motion to suppress, ***450 and the State dismissed Counts I and II.
¶8 Questo appeals.
STANDARD OF REVIEW
¶9 We review a district court's ruling on a motion to suppress evidence to determine whether the court's factual findings are clearly erroneous and whether the court's interpretation and application of the law are correct. State v. Demontiney , 2014 MT 66, ¶ 9, 374 Mont. 211, 324 P.3d 344. A court's findings are clearly erroneous if they are unsupported by substantial evidence, if we believe the court has misapprehended the effect of the evidence, or if our review of the record leaves us with the definite or firm conviction that a mistake has been made. State v. Morrisey , 2009 MT 201, ¶ 14, 351 Mont. 144, 214 P.3d 708.
DISCUSSION
¶10 Did the District Court err by denying Questo's Motions to Suppress ?
¶11 Questo argues that, "prior to the 'stop' of his vehicle, there was no particularized suspicion to investigate [him] for any potential driving offense." While he concedes the phone call from the Boys and Girls Club employees was reliable, he notes it only reported the smell of alcohol, which was "not enough to establish particularized suspicion sufficient for law enforcement to seek out and seize [him] as he was gassing up at the Fort Lewis convenience store," but was merely a "generalized suspicion" and an "unconfirmed hunch." He thus argues the District Court erred in finding there was particularized suspicion for the stop under the Pratt test.
¶12 The Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution protect citizens from unreasonable searches and seizures. Montanans are afforded even greater protection from government intrusion than what the U.S. Constitution provides. State v. Graham , 2007 MT 358, ¶ 12, 340 Mont. 366, 175 P.3d 885 (citing the Right to Privacy enumerated in Article II, Section 10 of the Montana Constitution ). The Fourth Amendment and Article II, Section 11 both require law enforcement officers to obtain a warrant before seizing an individual. Graham , ¶ 13. An exception to the warrant requirement is the "investigatory or 'Terry stop,' which allows 'a brief seizure of the individual that must be supported by a reasonable [or particularized] suspicion of criminal activity.' " State v. Ballinger , 2016 MT 30, ¶ 16, 382 Mont. 193, 366 P.3d 668 (quoting State v. Lovegren , 2002 MT 153, ¶ 15, 310 Mont. 358, 51 P.3d 471 ***451 (citing *405 Terry v. Ohio , 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968) )).
¶13 Police did not initiate a stop of Questo's vehicle, and thus, as Questo correctly notes, we must first determine whether a seizure occurred that required particularized suspicion. State v. Strom , 2014 MT 234, ¶ 10, 376 Mont. 277, 333 P.3d 218 ("we must first determine whether a seizure has occurred," requiring particularized suspicion). "Not all interactions between peace officers and citizens rise to the level of an investigative stop or seizure." State v. Dupree , 2015 MT 103, ¶ 14, 378 Mont. 499, 346 P.3d 1114. A seizure has occurred only when the officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." State v. Wilkins , 2009 MT 99, ¶ 8, 350 Mont. 96, 205 P.3d 795 (quoting Terry , 392 U.S. at 19 n.16, 88 S. Ct. at 1879 ). We have generally stated that a person has been "seized" if a reasonable person "would have believed that he was not free to leave," Ballinger , ¶ 18 (citations omitted), but the "central inquiry under the Fourth Amendment is the reasonableness under all the circumstances of a particular governmental invasion of a citizen's personal security." Wilkins , ¶ 8 (quoting State v. Clayton , 2002 MT 67, ¶ 12, 309 Mont. 215, 45 P.3d 30 ) (citing Terry , 392 U.S. at 19, 88 S. Ct. at 1879 ). We have relied upon circumstances cited by the United States Supreme Court in United States v. Mendenhall , 446 U.S. 544, 100 S. Ct. 1870, 64 L.Ed.2d 497 (1980), which may indicate a person was seized: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Wilkins , ¶ 9 (quoting Mendenhall , 446 U.S. at 554, 100 S. Ct. at 1877 ). We have recognized that these are not an exhaustive list and that applying them "is necessarily imprecise and will vary depending on the setting in which the conduct occurs." Strom , ¶ 10 (quoting Clayton , ¶ 23 ).
¶14 In State v. Wagner , 2003 MT 120, ¶¶ 3, 31, 315 Mont. 498, 68 P.3d 840, we held no investigative stop occurred when a defendant exited the highway, parked his vehicle, and entered a gas station "on his own volition" before being approached by a police officer investigating a citizen tip that a lone male, who appeared to be driving while intoxicated, had recently "staggered into the building." We noted that the officer "did not summon Wagner to his presence," but instead initiated the encounter in a "public venue of the defendant's choosing." Wagner was standing inside a public gas station when the officer approached and "requested that Wagner accompany him outside for further questioning." We concluded this was not an investigative stop because the officers did not "restrain[ ] Wagner's liberty, by means of ***452 physical force or a show of authority," and he was "free to disregard" the officer's request. Wagner , ¶ 31. See also Clayton , ¶ 27 (holding officers stopping behind the defendant's vehicle, which was parked on a public street, and shining a spotlight inside the vehicle did not constitute seizure because the officers did not initiate the stop, did not activate their emergency lights or sirens, and the encounter occurred in a public place); Wilkins , ¶ 12 (finding no investigative stop when an officer approached a parked car to "find out why [the defendant] was parked on a dark remote street late at night in cold weather" without "activat[ing] his emergency light, display[ing] a weapon or employ[ing] threatening tones").
¶15 Questo was parked in a public location of his choosing at the time of the encounter. Routzahn did not activate his vehicle's lights or siren and, as he testified and the video evidence clearly indicates, parked his patrol car a significant distance from the front of Questo's truck. The vehicles were far enough apart that other cars could enter and exit the gas station through the driveway between Questo's truck and the patrol car. Routzahn approached Questo alone and on foot, did not draw his weapon, and did not use harsh language or speak in a harsh tone, but rather used a neutral tone to inform Questo about the citizen report. Routzahn proceeded to ask Questo questions and requested his voluntary participation in field sobriety testing, to which Questo consented.
¶16 Citing Wilkins , Questo argues, "[t]his is not the kind of random, fortuitous, voluntary *406 encounter that does not qualify as a seizure under Montana law." Questo posits that Routzahn "went looking for Questo's vehicle following the report from dispatch ... intend[ing] to conduct a DUI investigation, no matter what." The implication of Questo's argument is that a police encounter must be random, fortuitous, and voluntary to not constitute a seizure, and that Routzahn's motivation to investigate for DUI required particularized suspicion.
¶17 However, Questo seems to ignore the longstanding requirement to consider "all the circumstances" surrounding a police encounter when determining whether a seizure occurred. Strom , ¶ 10. Montana law does not require police encounters to be either random, fortuitous, and voluntary, or supported by particularized suspicion. Further, we have recognized that police encounters may not constitute "seizures" or investigative stops, despite an officer's inclination to investigate. In Wilkins , upon which Questo relies, we held no seizure occurred when a police officer "stopped to investigate" a parked vehicle that was left running at an unusual time of night in an area known for recent burglaries. Wilkins , ¶¶ 3, 14. In Ballinger , an officer was ***453 investigating a suspicious report of a vacated house with its door open. The officer observed two individuals walking on a public street toward the vacant house and "intercepted" them by shining a flashlight and informing them he was "investigating a suspicious call," and then asked where they were going. Ballinger , ¶¶ 19-20. We held that this was not a seizure because the officer did not ask them to do anything and "made no show of force or authority" at the time of his initial encounter. Ballinger , ¶ 20. Likewise, in Dupree , after receiving a tip that the defendant would be in possession of illegal drugs when she arrived at a train station later that day, two police officers "proceeded to the station to investigate." Dupree , ¶ 4. The officers located the defendant standing "in a public place of her choosing," approached her, identified themselves, and told her about the tip. They proceeded to ask, "in permissive terms," if the defendant was willing to be searched and she agreed. We held a seizure had not occurred because the officers "did not utilize threats or use a show of force to compel compliance" or in any way restrain the defendant's liberty "by means of physical force of show of authority." Dupree , ¶ 15 (internal quotations omitted).
¶18 Here, Officer Routzahn's actions are similar to those of the officers in Wilkins , Ballinger , and Dupree . Although Routzahn was responding to a tip and had an investigative motive when he approached Questo, he did nothing, as explained above, to restrain Questo's liberty. The facts found by the District Court do not support a conclusion that Questo was seized when Routzahn approached and engaged him.
CONCLUSION
¶19 While the District Court found that Officer Routzahn had particularized suspicion to investigate Questo pursuant to a Pratt analysis, and denied Questo's motions to suppress on that basis, we conclude Officer Routzahn's approach to Questo at the fuel pump was a routine police encounter that did not require particularized suspicion. He thereafter acquired particularized suspicion for further investigation upon Questo's voluntary participation in his questioning and testing. We will affirm a district court when it reaches the right result, even if it reaches that result for the wrong reason. State v. Ellison , 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646.
¶20 Affirmed.
We concur:
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.