FILED

09/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0550

DA 22-0550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 199

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

JOSHUA ALLEN BALDWIN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DC-21-66
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Appellate Defender, Michael Marchesini, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

              Ben Krakowka, Anaconda-Deer Lodge County Attorney, Michelle
Sievers, Deputy County Attorney, Anaconda, Montana

Submitted on Briefs:  June 26, 2024

Decided:  September 3, 2024

Filed:

_____
                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1   Joshua Allen Baldwin (Baldwin) appeals an adverse order from the Third Judicial District Court, Anaconda-Deer Lodge County, denying a suppression motion after he was charged with felony drug possession in violation of § 45-9-102, MCA.

¶2   We reverse.

¶3   We restate the issues on appeal as follows:

*Issue One: Should the District Court have granted Baldwin's motion to suppress evidence gathered following his arrest?*

*Issue Two: Was the evidence seized pursuant to Baldwin's arrest subject to a good faith or independent source exception to the exclusionary rule?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4   On July 22, 2021, Officer Daniel Beasley (Beasley) arrested Baldwin on probable cause that he was in contempt of court. Beasley found Baldwin inside the Lucky Lil's Casino in Anaconda, which he thought to be in violation of Baldwin's conditions for release on bail (pre-release).[1]

¶5   Prior to making the arrest, Beasley stepped outside of the Lucky Lil's to confirm with dispatch that Baldwin was subject to pre-release conditions. According to Beasley's police report, dispatch advised him that Baldwin "was on court conditions and was not to be in the casino." Beasley then called Officer Pasha (Pasha) for backup, who arrived shortly thereafter with Sergeant Deeks (Deeks).

---

[1] Beasley knew Baldwin because of his previous criminal history, including the assault and partner-family-member assault that were the pending charges.

2

¶6     Beasley asked Baldwin to step outside, and, after a brief discussion, arrested him for contempt of court. Baldwin handed him a butane lighter and other personal items from his pants pockets. While Baldwin was in the back of Beasley's patrol car, Deeks observed him suspiciously "messing around in the back."

¶7     Deeks and Pasha went to look inside Baldwin's car and observed a butane refill bottle in the front passenger seat, a pair of pliers that appeared to be burnt on the passenger side floorboard, and a Ziploc baggie containing a "white crystalline substance" next to the pliers.

¶8     After Beasley transported Baldwin to the county jail, he returned to the Town Pump and corroborated Deeks' and Pasha's observations. Beasley contacted the county attorney to obtain a warrant to search the vehicle. After they obtained the warrant, Beasley, Deeks, and Pasha had Baldwin's car towed to the police station and searched it in the sally port. The officers discovered a pair of discolored pliers, two butane style lighters, and a Ziploc baggie with a substance that later tested positive for methamphetamine.

¶9     The State charged Baldwin with Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102, MCA, and Criminal Possession of Drug Paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA.

¶10    On January 13, 2022, Baldwin moved to suppress the evidence seized following his arrest, arguing that the arrest was unlawful, and anything seized thereafter was "fruit of the poisonous tree."

¶11    On February 23, 2022, the District Court denied Baldwin's motion to suppress.

3

¶12    On March 23, 2022, Baldwin pleaded guilty to the possession charge. The State dismissed the paraphernalia charge, and Baldwin reserved his right to appeal the denial of his suppression motion.

**STANDARD OF REVIEW**

¶13    "On review of a lower court denial of a motion to suppress evidence, we review supporting findings of fact only for clear error and lower court conclusions and applications of law de novo for correctness." *State v. Laster*, 2021 MT 269, ¶ 9, 406 Mont. 60, 497 P.3d 224.

**DISCUSSION**

¶14    *Issue One: Should the District Court have granted Baldwin's motion to suppress evidence gathered following his arrest?*

¶15    The threshold issue in this case is whether Beasley had probable cause to arrest Baldwin. We hold that probable cause could not have formed based on suspected contempt of court, thus Baldwin's arrest was unlawful. Because the officers would not have searched Baldwin's car but for the unlawful arrest, all evidence obtained pursuant to the arrest should have been suppressed under the Fourth Amendment of the United States Constitution and Article II, Sections 10 and 11, of the Montana Constitution.

¶16    Montanans enjoy a heightened right to privacy and freedom from unreasonable search and seizure. U.S. Const. amend. IV; Mont. Const. art. II, §§ 10, 11; *State v. Ballinger*, 2016 MT 30, ¶ 15, 382 Mont. 193, 366 P.3d 668 (citation omitted). A warrantless arrest is unreasonable per se unless any of the few, narrow exceptions to the

4

warrant requirement apply. *State v. Zeimer*, 2022 MT 96, ¶ 26, 408 Mont. 433, 510 P.3d 100 (citations omitted).

¶17 An officer may arrest an individual without a warrant, for example, if there is probable cause to believe that the person is committing or has committed an offense. *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231 (citing § 46-6-311, MCA). "Probable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *Williamson*, ¶ 12 (citations omitted).

¶18 "A person commits the offense of criminal contempt when the person knowingly engages in . . . purposely disobeying or refusing any lawful process or other mandate of a court . . . ." Section 45-7-309(1)(c), MCA.

¶19 Here, the parties dispute whether "any lawful process or other mandate of the court" under the meaning of § 45-7-309(1)(c), MCA, includes violations of pre-release conditions. Baldwin contends that the District Court's pre-release conditions do not equate to an order to do or refrain from doing a particular act, thus they are not an independent "mandate" of the Court. Baldwin asserts that § 46-9-503, MCA, provides the remedy for violations of pre-release conditions, and allowing separate contempt of court charges would be redundant and run afoul of the Legislature's intent.

¶20 Indeed, § 46-9-503(1), MCA, prescribes procedures for violations of pre-release conditions, stipulating that "A judge may issue a warrant for the arrest of a defendant charged with violating a condition of release." Once the defendant is arrested, he "must be

5

brought before a judge," who may then revoke his release and order bond forfeiture. Section 46-9-503(1)-(5), MCA. Baldwin notes that there is no separate statutory provision allowing for a warrantless arrest when a defendant violates pre-release conditions, in contrast to statutes that do so for suspected post-sentence probation or parole violators. *See* §§ 46-23-1012(2), -1023(2), MCA. We are persuaded that the Legislature intended § 46-9-503(1), MCA, to solely dictate the judicial procedure for revoking a defendant's release on bail, and allowing separate contempt of court charges would obfuscate that process. We presume that the Legislature does not pass useless or meaningless legislation. *Kish v. Mont. State Prison*, 161 Mont. 297, 301, 505 P.2d 891, 893 (1973).

¶21 In a similar context, we have held that suspected violations of suspended sentence conditions may not form the basis for a contempt of court charge. *State v. Letasky*, 2007 MT 51, ¶¶ 16-18, 336 Mont. 178, 152 P.3d 1288. There, a criminal defendant was sentenced to one year in jail for partner-family-member assault with all but three days suspended on the condition (among others) that he would not have any contact with his ex-wife. *Letasky*, ¶ 4. When the defendant violated the no-contact order, he was charged with contempt of court, which he moved to dismiss. *Letasky*, ¶ 7. The district court denied his motion. *Letasky*, ¶ 8. We reversed. *Letasky*, ¶ 19. We reasoned that suspended sentence conditions are not "mandates" of the court under the meaning of § 47-7-309(1)(c), MCA:

> A condition of a suspended sentence, unlike an order of the court, is not an independent mandate of the court. A condition of a suspended sentence represents a requirement that the Montana Code permits a court to place upon its order suspending an offender's sentence. Section 46-18-201(4), MCA. A condition of a suspended sentence would be meaningless without reference

6

to the independent mandate, specifically, the order of suspended sentence, that it conditions.

*Letasky*, ¶ 15.

¶22   While suspended sentence conditions and pre-release conditions are procedurally distinct, the same logic applies here. The District Court imposed, as one of several conditions to pre-release, that Baldwin was to refrain from going into "bars or taverns, or other businesses where alcoholic beverages are the chief item of sale." While it was conditioned, Baldwin's release could not be revoked without a prosecutor's written revocation motion and a subsequent arrest warrant. Section 46-9-503, MCA.

¶23   According to Beasley, contempt of court was the sole basis for Baldwin's arrest. Baldwin's mere presence in a casino did not provide sufficient facts and circumstances for a reasonable person to believe he was committing or had committed a crime. He had not committed a crime in the officer's presence that would have provided probable cause to make a warrantless arrest. *Williamson*, ¶ 12.

¶24   *Issue Two: Was the evidence seized pursuant to Baldwin's arrest subject to a good faith or independent source exception to the exclusionary rule?*

¶25   Courts are not allowed to use evidence that stems from an illegal act of the police. *State v. Therriault*, 2000 MT 286, ¶ 57, 302 Mont. 189, 14 P.3d 444. The core premise of the exclusionary rule is to "deter future unlawful police conduct." *Therriault*, ¶ 57 (citing *State v. Pipkin*, 1998 MT 143, ¶ 12, 289 Mont. 240, 961 P.2d 733). We have recognized a few narrow exceptions to this general rule when derivative evidence is "(1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably

7

discovered apart from the constitutional violation." *State v. New*, 276 Mont. 529, 536, 917 P.2d 919, 923 (1996) (citing *State v. Pearson*, 217 Mont. 363, 366, 704 P.2d 1056, 1058-59 (1985); *Silverthorn Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S. Ct. 182, 183 (1920); *Wong Sun*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 417 (1963)).

¶26    The State argues that, regardless of our ruling regarding Baldwin's alleged contempt of court violation, evidence supporting his drug conviction should not be excluded because the officers relied, in good faith, on a reasonable interpretation of the law in obtaining it. Further, the State contends the circumstances fit the independent source exception to the exclusionary rule.

¶27    At the outset, we decline to consider the State's argument that a good faith exception applies. "Generally, an appellate court does not address issues raised for the first time on appeal." *State v. Sedler*, 2020 MT 248, ¶ 10, 401 Mont. 437, 473 P.3d 406 (citations omitted). Federal courts have found it appropriate to except unconstitutional police conduct from the exclusionary rule when the state was acting under a good faith interpretation of the law. *See, e.g., Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419 (2011). We have never applied a good faith exception to evidence seized by police officers pursuant to an unlawful search, and we are under no obligation to lower the floor under Montana's unique and exceptional privacy protections and do so under the specific facts of this case. *See generally United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984); *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980). The State did not raise this argument below, and thus we will not consider its merits here.

8

¶28 Furthermore, we are not persuaded that the evidence against Baldwin should have been allowed because it came from an independent source. Baldwin's arrest was unlawful, and the record indicates that the only reason the officers searched his vehicle was because he was acting strangely in the back of the patrol vehicle. The evidence did not come from an independent source. This is not a situation, like *Laster*, where the defendant *consented* to a search following an unlawful arrest, and evidence was allowed because it came from the defendant himself. *Laster*, ¶ 46. Nor is it like *Therriault*, where evidence that an underage woman was living with a statutory rape convict was allowed because it came from the defendant's sister—an independent source—even though a probation officer had previously performed an unlawful search. *Therriault*, ¶¶ 60-61. There is no basis for the State's argument, here, that "the officers learned about the methamphetamine in Baldwin's car from a source independent of Baldwin's prior arrest." While they may have discovered it when Baldwin was enroute to the county jail with Beasley, the search was not attenuated from the arrest at all. There is nothing to indicate the officers could have searched Baldwin's vehicle but for his arrest. The contraband that was seized was fully integrated with the unlawful arrest and therefore should have been suppressed. *Therriault*, ¶ 57.

**CONCLUSION**

¶29 Baldwin's arrest was unlawful, and any evidence seized as a result should have been suppressed under the Fourth Amendment and Article II, Sections 10 and 11, of the Montana Constitution. The District Court erred in denying Baldwin's suppression motion.

¶30 Reversed.

9

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE