FILED

03/17/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0730

DA 23-0730

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 56

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ALEJANDRO FLORES-REYES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-22-375
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Emma N. Sauve, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

            Matthew Jennings, Missoula County Attorney, Andrea R. Haney,
Brandon Zeak, Deputy County Attorneys, Missoula, Montana

Submitted on Briefs:  February 11, 2026

Decided:  March 17, 2026

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Alejandro Flores-Reyes appeals from the denial by the Fourth Judicial District Court, Missoula County, of his motion to suppress evidence discovered during a warrantless search of a Nissan Rogue he was driving. Flores-Reyes argues on appeal that the search was unconstitutional; that the District Court lacked authority to reinstate a previously dismissed information; and that his counsel was constitutionally ineffective for failing to object and affirmatively stipulating to the admission of testimonial hearsay. We hold that the constitutionality of the search is dispositive and therefore do not reach the other issues. Thus, we address the following restated issue:

> *Whether the contents of a closed, zippered pouch discovered in a concealed compartment of the vehicle was the fruit of an unconstitutional search.*

We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On May 27, 2022, Nacheyla Dempsey reported that her 2012 Nissan Rogue had been stolen. She identified her uncle, Travis Lozeau, as a possible suspect. On June 21, 2022, Missoula police officers located the Nissan parked at Montana Lil's Casino. The vehicle's license plate confirmed it was the vehicle reported stolen.

¶3 Officers entered the casino and detained Flores-Reyes, who had arrived in the Nissan and possessed its keys. After being advised of his rights, Flores-Reyes told officers he had recently purchased the vehicle from Ty Gardipe in Spokane for $2,500 and had driven to Missoula to complete the paperwork. He stated that he had cleaned out the vehicle when he acquired it and that everything inside the vehicle belonged to him.

2

¶4     Officers contacted Dempsey by telephone. Dempsey consented to a search of the Nissan. Officers did not request or obtain Flores-Reyes' consent.

¶5     While searching the vehicle, an officer reached beneath the steering wheel and manipulated a plastic panel below the center console, revealing a concealed void space. Inside that concealed compartment, the officer located a small black zippered pouch. The pouch was closed. The officer opened it and discovered approximately 2,085 blue pills later suspected to contain fentanyl. At that point, officers stopped the search and arranged to have the vehicle towed so they could seek search warrants.

¶6     Relying in part on the discovery of the pills inside the closed pouch, officers applied for and obtained warrants to search the Nissan more thoroughly and to search Room 544 of the Super 8 motel, where Flores-Reyes had been staying. Execution of those warrants resulted in the seizure of additional narcotics, including approximately 1.5 pounds of heroin, approximately 38 grams of methamphetamine, and additional fentanyl pills from concealed areas within the vehicle, as well as methamphetamine and drug paraphernalia from the motel room.

¶7     The State initially charged Flores-Reyes with two counts of criminal possession of dangerous drugs with intent to distribute under § 45-9-103, MCA, and one count of felony theft. The information was later amended to add an additional count of criminal possession with intent to distribute. The theft count was subsequently dismissed. Thereafter, at the State's request, the District Court dismissed the case to allow Flores-Reyes to face federal prosecution arising from the same conduct. When the federal prosecution was later

3

abandoned, the State moved to reinstate the previously dismissed case. The District Court granted that motion and reinstated the previously dismissed amended information without requiring the State to seek leave to file a new charging document.

¶8 Before trial, Flores-Reyes moved to suppress all evidence obtained from the Nissan and the motel room, arguing that the warrantless opening of the concealed compartment and closed pouch violated Article II, Sections 10 and 11, of the Montana Constitution and the Fourth Amendment to the United States Constitution. He further argued that the subsequently obtained warrants were also tainted because they were based on evidence discovered during the unlawful search. The District Court denied the motion, concluding that Flores-Reyes lacked a legitimate possessory interest in the stolen vehicle and therefore had no reasonable expectation of privacy in its contents.

¶9 Following a jury trial conducted under the reinstated amended information, Flores-Reyes was convicted of three counts of criminal possession with intent to distribute under § 45-9-103, MCA, based on the fentanyl, heroin, and methamphetamine seized from the vehicle and motel room. He was sentenced to consecutive terms at the Montana State Prison. Flores-Reyes now appeals on numerous grounds. We hold that the denial of his motion to suppress is dispositive.

## STANDARD OF REVIEW

¶10 We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Elison*, 2000 MT 288, ¶ 12, 302 Mont. 228, 14 P.3d 456.

4

## DISCUSSION

¶11 *Whether the contents of a closed, zippered pouch discovered in a concealed compartment of the vehicle was the fruit of an unconstitutional search.*

¶12 Both the Fourth Amendment to the United States Constitution and Article II, Sections 10 and 11, of the Montana Constitution protect individuals against unreasonable searches and seizures. Warrantless searches are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Munson*, 2007 MT 222, ¶ 50, 339 Mont. 68, 169 P.3d 364 (citing *Elison*, ¶ 39). The State bears the burden of establishing that a warrantless search falls within a recognized exception. *State v. Peoples*, 2022 MT 4, ¶ 57, 407 Mont. 84, 502 P.3d 129.

¶13 The exception on which the State relies is third-party consent. Consent may be given by a person possessing common authority over the property. *Munson*, ¶ 50; *State v. McLees*, 2000 MT 6, ¶ 13, 298 Mont. 15, 994 P.2d 683. Common authority rests not on bare title ownership but on "mutual use of the property by persons generally having joint access or control for most purposes." *McLees*, ¶ 13 (citing *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)). Thus, the validity of third-party consent depends upon whether the consenting party shared mutual use and joint access such that the nonconsenting party assumed the risk that the property would be inspected. Here, although Dempsey was the titled owner of the vehicle, the record reflects that she had not possessed or used the vehicle for several weeks and had no joint access to or mutual use of Flores-Reyes' personal effects within it and no common authority over a closed personal

5

container placed beyond public view. Title ownership alone does not establish common authority over the personal effects of another.

¶14 The scope of consent is measured by objective reasonableness—what a typical reasonable person would have understood by the exchange between the officer and the consenting party. *Florida v. Jimeno*, 500 U.S. 248, 250-51, 111 S. Ct. 1801, 1803-04 (1991); *State v. Parker*, 1998 MT 6, ¶ 21, 287 Mont. 151, 953 P.2d 692. In *Jimeno*, the United States Supreme Court concluded that a suspect's general consent to search his vehicle for narcotics permitted inspection of a paper bag lying in plain view on the floorboard. *Jimeno*, 500 U.S. at 251-52, 111 S. Ct. at 1803-04. That case, however, involved consent given by the suspect himself and an expressly identified object of search. Here, officers did not obtain consent from Flores-Reyes, did not articulate narcotics as the object of the search, and did not encounter a container in plain view. Instead, they manipulated a concealed panel to expose a hidden void space and opened a closed personal pouch. Under Montana's independent constitutional protections of privacy and security from unreasonable searches, consent to enter a vehicle to recover property does not reasonably extend to opening sealed containers absent mutual use or joint access sufficient to establish common authority.

¶15 In *Parker*, we concluded that it was objectively reasonable for the officer to believe that consent extended to closed containers where the vehicle owner and both passengers had consented to the search, and none claimed ownership of the container searched. *Parker*, ¶ 22. We also relied on Parker's disclaimer of any interest in the fanny pack at

issue. *Parker*, ¶ 22. Here, in contrast, Flores-Reyes did not consent to the search, affirmatively asserted that everything in the vehicle belonged to him, and did not disclaim any interest in the closed pouch. Moreover, officers discovered the pouch only after they manipulated a concealed panel to expose a hidden void space. Under these materially different circumstances, *Parker* does not support the extension of third-party consent to the sealed container at issue.

¶16 Although we agree that Dempsey's consent permitted the officers to enter the vehicle for purposes of recovering and inventorying property before returning it to Dempsey, the registered owner, the scope of that consent did not extend to a generalized exploratory search of a closed container in which Flores-Reyes expressly claimed ownership. In *State v. Hill*, 2004 MT 184, 322 Mont. 165, 94 P.3d 752, we held that when police, at the owner's request, take possession of a vehicle after allowing the unauthorized driver to retrieve his possessions, the owner becomes the sole party remaining with authority to consent to a search of the contents. *Hill*, ¶ 35. There, the defendant disclaimed ownership of the items searched and effectively surrendered them to the owner's control. *Hill*, ¶ 35. Here, by contrast, Flores-Reyes was not permitted to retrieve his belongings and affirmatively asserted that everything in the vehicle belonged to him. Nothing in the record indicates that he surrendered any possessory interest in the zippered pouch.

¶17 Moreover, in *Elison,* we recognized that placing an item beyond public view in a location from which others may be excluded evidences an expectation of privacy. *Elison*, ¶ 49. Officers discovered the pouch at issue only after they manipulated a concealed panel

7

to expose a hidden void space containing the pouch zipped closed. Under these circumstances, the sealed container was not simply an item within the passenger compartment, but an object deliberately placed beyond public view. The scope of a consent search is defined by its stated purpose and the object reasonably understood to be sought. *Jimeno*, 500 U.S. at 251, 111 S. Ct. at 1804. Consent to enter a vehicle to secure visible property does not reasonably extend to opening sealed containers concealed within hidden compartments absent surrender or disclaimer of ownership.

¶18 Here, officers entered the vehicle to secure and remove property before returning it to Dempsey. They did not articulate narcotics as the object of the search and had no probable cause to believe contraband was present. The officers discovered the closed pouch only after they manipulated a concealed panel to expose a hidden void space. Under these circumstances, opening the sealed pouch exceeded the objectively reasonable scope of the consent provided, transforming a caretaking entry into an investigative search and rendering the discovery of the pills unconstitutional. The pills discovered in the pouch formed the sole basis for the subsequent warrant applications.

¶19 The record establishes that officers halted their search after discovering the pills to seek search warrants for the remainder of the vehicle and for the motel room where Flores-Reyes was staying. The warrant applications relied explicitly on the discovery of the fentanyl pills in the sealed pouch as probable cause. The subsequently issued warrants led to the seizure of additional fentanyl, heroin, and methamphetamine—evidence that

8

formed the basis of Flores-Reyes' three convictions for criminal possession with intent to distribute under § 45-9-103, MCA.

¶20 We have recognized a few narrow exceptions to the general rule that courts are not allowed to use evidence that stems from an illegal act of the police when derivative evidence is "(1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation." *State v. Baldwin*, 2024 MT 199, ¶ 25, 418 Mont. 70, 555 P.3d 748 (quoting *State v. New*, 276 Mont. 529, 536, 917 P.2d 919, 923 (1996) (citing additional authority)). The State has not argued, and the record does not establish, any such exception.

¶21 Because the warrant applications relied on the unlawful discovery of the pills in the closed pouch as probable cause, the evidence subsequently seized pursuant to those warrants was also tainted as fruit of the poisonous tree. *State v. Pearson*, 217 Mont. 363, 366, 704 P.2d 1056, 1058-59 (1985). The District Court therefore erred in denying the motion to suppress.

## CONCLUSION

¶22 The District Court erred in denying Flores-Reyes' motion to suppress. The pills discovered inside the closed pouch were obtained in violation of Article II, Sections 10 and 11, of the Montana Constitution and the Fourth Amendment to the United States Constitution and must be suppressed. Because the subsequently issued search warrants

9

were predicated on that unlawful discovery, all evidence seized pursuant to those warrants was also tainted and must likewise be suppressed.

¶23 We therefore reverse the order denying the motion to suppress, vacate Flores-Reyes' convictions and judgment, and remand to the District Court with instructions to suppress the evidence obtained from the closed pouch and all evidence derived from that unlawful search.

¶24 Reversed and remanded.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON